# IN THE UNITED STATES DISTRICT COURT
# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br><br>           Petitioner,<br><br>      v.<br><br>XCAST LABS, INC.,<br><br>           Respondent. | Case No. Misc. 21-1026 MWF (MRWx)<br><br>REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE |

This Report and Recommendation is submitted to the Honorable Michael W. Fitzgerald, United States District Judge, pursuant to 28 U.S.C. § 636 and General Order 05-07 of the United States District Court for the Central District of California.

**SUMMARY OF RECOMMENDATION**

The Federal Trade Commission wants to enforce a civil investigative demand (CID) issued to XCast Labs.

The Court (Magistrate Judge Wilner) concludes that the FTC is entitled to judicial enforcement of the CID. XCast failed to exhaust an available

administrative remedy to challenge the CID. As a result, the company has waived consideration of its objections in this district court. Were the Court to reach the merits of those objections, XCast has not convincingly demonstrated that the FTC plainly lacks authority to investigate the business. Finally, XCast's minimal evidentiary presentation has not proved that compliance with the CID is unduly burdensome.

For these reasons, it is recommended that the FTC's application for an order compelling compliance with the CID be granted.

**FACTS AND PROCEDURAL HISTORY**

According to the petition, the FTC has authorized a long-running investigation into misconduct involving commercial telemarketers. In early 2021, the FTC issued a CID in that investigation against XCast, a Los Angeles-based provider of Voice over Internet Protocol (VoIP) services. (Docket # 1 at 4-5.) The CID sought a variety of business and customer records and responses to interrogatories. (Docket # 1-2 at 16-18.) XCast provided some of the records and information that the CID sought during the spring and summer of 2021. (Docket # 1 at 9-10.)

However, the agency did not receive full responses from the company. Because of this, the FTC filed this petition in August 2021. (Id. at 10-11.) After video discussions with Judge Wilner, XCast supplemented its production to the government to some degree. (Docket # 15-2 at 3-4; # 15-3 at 3.) The agency believes that the company's responses are still deficient, though; it continues to seek "full compliance with the CID." (Docket # 16 at 21.)

Judge Wilner received and considered several rounds of briefing from the parties in the course of this enforcement action. (Docket # 1-1, 15, 16.) That briefing also included supplemental submissions addressing XCast's jurisdictional challenge to the ability of the FTC to investigate the company's

activities. (Docket # 17, 18, 19-1.) XCast acknowledged en passant that it did not pursue administrative relief from the FTC regarding the scope or contents of the CID before the agency commenced this federal enforcement action. (Docket # 15 at 8.)

**RELEVANT FEDERAL LAW**

The parties essentially agree on the governing legal standard for this Court to apply in evaluating a request to compel compliance with a federal administrative subpoena or document demand. (Docket # 15 at 17.) The key issues in the analysis are "(1) whether Congress has granted the authority to investigate; (2) whether procedural requirements have been followed; and (3) whether the evidence [sought by the subpoena] is relevant and material to the investigation." EEOC v. Karuk Tribe Housing Auth., 260 F.3d 1071, 1076 (9th Cir. 2001) (citation omitted); EEOC v. Federal Express Corp., 558 F.3d 842, 848 (9th Cir. 2009) (same). "An affidavit from a government official is sufficient to establish a prima facie showing that these requirements have been met." FDIC v. Garner, 126 F.3d 1138, 1143 (9th Cir. 1997).

If a subpoena satisfies this test, compliance should be ordered "unless the party being investigated proves the inquiry is unreasonable because it is overbroad or unduly burdensome." EEOC v. Children's Hospital Medical Center of Northern California, 719 F.2d 1426, 1428 (9th Cir. 1983) (en banc) (overruled on other grounds); EEOC v. VF Jeanswear LP, 769 F. App'x 477, 478 (9th Cir. 2019) (same).

\* \* \*

The parties do not agree on whether XCast was obligated – and subsequently failed – to exhaust administrative opportunities to challenge the scope of the CID before this action was presented in district court.

The agency's enabling statute (the FTC Act) states that a party receiving a CID may file a petition with the FTC to modify or set aside a CID. 15 U.S.C. § 57b-1(f)(1-2). Agency regulations establish a pre-petition meet-and-confer requirement, detailed rules regarding the timing and scope of petitions, and a tight deadline by which the agency must typically rule on the petition. 16 C.F.R. § 2.10(a) et seq.

15 U.S.C. § 57b-1(e) authorizes the FTC to file a petition in a federal district court "for an order of such court for the enforcement" of a properly issued CID. Neither the statute nor the agency's regulations affirmatively state that a CID recipient waives the ability to defend a CID enforcement action if that party failed to pursue a CID-challenging petition with the FTC.

However, a hefty number of federal courts have concluded over the years that the doctrine of administrative exhaustion "applies to FTC investigatory proceedings." FTC v. Complete Merchant Solutions, LLC, 2020 WL 2059847 at *8 (D. Ut. 2020) (collecting many cases); FTC v. Tracers Information Specialists, Inc., 2016 WL 3896840 at *4 (M.D. Fla. 2016) (CID recipient's "failure to comply with the administrative procedure provided by the statute and the implementing regulations bars [company's] assertion of substantive objections to the CID in court"); FTC v. O'Connell Associates, 828 F. Supp. 165, 168 (S.D.N.Y. 1993) ("there was an administrative mechanism for him to utilize and he failed to do so"; court declined to address substance of objections to CID).[1]

---

[1] In its briefing, the FTC also offered additional citations to district court orders that purport to "find" that responding parties waived their right to oppose enforcement actions based on a lack of exhaustion. See Docket 16 at 14 (citations to orders in Bannon, Kushly, and Lambert).

Based on a review of the dockets and filings in those actions, it's apparent that the district courts merely endorsed proposed scheduling orders filed at the outset of the cases that established case management deadlines for the

\* \* \*

The recipient of an agency subpoena may challenge the agency's jurisdiction to regulate that party. The Ninth Circuit has stated that:

> Questions of regulatory jurisdiction are properly addressed at the subpoena-enforcement stage if [ ] they are ripe for determination at that stage. Compliance with a subpoena is a burden, and one that a person or institution that can show <u>it is not subject to the regulatory regime</u> in aid of which the subpoena was issued should not be required to bear.

<u>Karuk Tribe</u>, 260 F.3d at 1078 (quotation omitted, emphasis added). The circuit further describes a "narrow category of cases" in which a "pure question of law [ ] which does not depend on a factual inquiry" can establish that a federal agency is "not subject" to an agency statute, "and thus not subject to investigation" by the agency. <u>Id.</u> at 1077-78.

However, the scope of a federal court's inquiry regarding a jurisdictional challenge to an administrative subpoena is "quite narrow." <u>Children's Hospital</u>, 719 F.2d at 1428. As long as there is "some plausible ground for jurisdiction, or to phrase it another way, unless jurisdiction is <u>plainly lacking</u>, the court should enforce the subpoena." <u>Id.</u> at 1430 (cleaned up, emphasis added). "The 'plainly lacking' standard is necessarily a low bar to avoid tasking courts and parties with resolving complex hypotheticals before an agency even decides whether to take an enforcement action." <u>CFPB v. Future Income Payments, LLC.</u>, 252 F. Supp. 3d 961, 966 (C.D. Cal. 2017) (vacated in part on other grounds). A challenge to the "'coverage' of the [ ] applicable statute" is, in effect, an invitation to engage in "a fact-intensive inquiry" that

---

enforcement actions; they were not based on substantive, adversarial briefing of the parties on the waiver issue. The Court politely declines the FTC's invitation to conclude that those ministerial orders have any persuasive authority.

is inappropriate at the subpoena enforcement stage of an investigation. Id. at 967.

\* \* \*

A district court's evaluation of "whether evidence sought is relevant" or "whether a subpoena is overly burdensome" often turns on "fact-intensive, close calls." McLane Co., Inc. v. EEOC, ___ U.S. ___, 137 S. Ct. 1159, 1167-68 (2017). For this reason, a district court's decision whether to enforce or quash an administrative subpoena is "reviewed for abuse of discretion." Id. at 1168.

**ANALYSIS**

The Court concludes that the FTC is entitled to enforcement of the remainder of the CID issued to XCast.

1. As an initial matter, the Court finds that XCast forfeited its ability to oppose enforcement of the CID in federal court. The company received notice of the administrative procedure to challenge the scope and contents of the CID before the FTC. (Docket # 1-2 at 19.) Yet, it chose not to avail itself of that remedy. Instead, after negotiations with the FTC staff broke down, XCast waited until proceedings in this federal court to raise a variety of objections to the investigative request, including the complicated jurisdictional challenge asserted below. Ample authority supports the conclusion that a party must present and exhaust those objections administratively before coming to court. Complete Merchant Solutions, 2020 WL 2059847 at \*8; Tracers Information Specialists, 2016 WL 3896840 at \*4; O'Connell Associates, 828 F. Supp. at 168.

XCast weakly surveys a variety of other federal statutory schemes that do and do not expressly address exhaustion issues (prisoner litigation, the NLRB and CFPB investigative procedures, etc.) to suggest that no such requirement exists under the FTC Act. (Docket # 15 at 28-31.) That's rather

1  unconvincing, especially given the weight of the case law and the existence of
2  the statutorily-established administrative petition remedy with the FTC. It
3  makes little sense to conclude that Congress set up an entirely optional route
4  for challenging an investigative demand that a party could voluntarily choose
5  to avoid. The reality is that XCast has not "us[ed] all steps that the agency
6  holds out [to] address[ ] the issues on the merits" regarding the CID. Sisley v.
7  DEA, 11 F.4th 1029, 1035 (9th Cir. 2021) (quotation omitted). Whether
8  mandated by statute, precedent, or "sound judicial discretion" (id.), the
9  company failed to present its complaint regarding the investigation to the
10 agency in the manner set forth in the statute. XCast cannot pursue its
11 unexhausted contentions in this district court.

      2.    Even if the company could properly present its objections in this forum, its jurisdictional challenge is precisely of the nature that this district court should not take up at this stage of the proceedings. In a nutshell, XCast contends that it is a "common carrier" that is subject to federal regulation exclusively by the FCC, not the FTC. (Docket # 15 at 18-19.) XCast points to a variety of recent statutes, federal regulations, and industry statements to support its assertion that the FTC "plainly lacks jurisdiction" to investigate the company. (Id. at 17, 20-21.)

      XCast's position is nowhere as plain as it contends. To be sure, there certainly is an overlap in regulatory authority in the telecommunications field between the FCC and the FTC. The Ninth Circuit (sitting en banc) has noted that the two agencies have "concurrent jurisdiction" and share "regulatory oversight" over certain telecommunications companies. FTC v. AT&T Mobility LLC, 883 F.3d 848, 862 (9th Cir. 2018) (en banc). There are, in effect, "two cops on the beat" regulating those businesses; the FTC has

authority to "regulate common carriers' non-common-carriage activities," while the FCC regulates the common carrier aspects of phone companies. Id.

But how to figure out where the line is between those activities? Here, the bulk of the FTC's investigative requests deal with consumer-facing issues: telemarketing sales practices, monitoring of complaints and local regulatory inquiries, customer account and payment information, use of the FTC's Do Not Call Registry, etc. (Docket # 1-2 at 14-18.) The FTC's ability to investigate and regulate such topics is clearly "plausible." Children's Hospital, 719 F.2d at 1430. That's particularly true given that "the FTC may proceed against unfair [or deceptive] practices even if those practices violate some other statute that the FTC lacks authority to administer." AT&T Mobility, 883 F.3d at 862 (quotation omitted). Conversely, the determination of whether a VoIP provider falls wholly within the definition of a common carrier "is a fact-dependent inquiry" that has been "long-contested" in the industry and "raging for years." FTC v. Educare Centre Services, Inc., 433 F. Supp. 3d 1008, 1017-18 (W.D. Tex. 2020) (collecting cases, quotation omitted).

XCast may potentially be able to defend itself in substantive litigation with the FTC by asserting that it is wholly exempt from FTC regulation. But no aspect of the regulatory scheme (and certainly not the meager bits and pieces of authority strung together in the company's briefs) makes it plain that the FTC has no legal authority over XCast. There is a widely known factual dispute about what the company's VoIP business actually is and how close it falls under the common carrier umbrella. That is sufficient for the FTC to get over the "low bar" of seeking compliance with its subpoenas "before [it] even decides whether to take an enforcement action" against XCast. Future Income Payments, 252 F. Supp. 3d at 966.

3. Finally, XCast does not convincingly demonstrate that it would be unduly burdensome for the company to respond to the remainder of the FTC's requests. The Court closely reviewed the declaration of Stephen Nelson, a senior executive with the company, who provided the main evidentiary support for the company's claim. Mr. Nelson states that he "would be the person who would manage" the project of compiling responsive materials for the FTC. (Docket # 15-2 at 5.) Mr. Nelson doesn't believe that some types of materials that the agency seeks still exist. (If so, he can likely attest to that in a manner acceptable to the FTC staff.)

However, "assuming" there are additional materials to locate, Mr. Nelson broadly declares that they are in offices in California, Illinois, or Iowa that "remain[ ] shuttered due to Covid restrictions." Because of family health concerns, Mr. Nelson states that he is "restricted from travel per medical directive" and cannot "do that work." He also asserts – without support – that "it would be impossible for me to fulfill my many other job responsibilities" if he were to try to comply with the FTC's document requests. (Id. at 5-6.)

* * *

The Court will not order Mr. Nelson (or any other XCast employee or attorney) to take any step that potentially jeopardizes their health. Like the rest of society, the Court is well aware of the risks and consequences posed by the ongoing coronavirus crisis. No federal investigation warrants the threat of significant illness to Mr. Nelson or his family.

That said, however, most American businesses – and this district court – have eventually found ways to safely resume operations by the end of the second year of this pandemic. I accept that Mr. Nelson may not be the optimal person to hunt through boxes of records due to his health concerns.

But I do <u>not</u> accept the blanket assertion that the company's records are completely unavailable and inaccessible in the way that he suggests. All forms of litigation (including document production) have continued almost unabated since the outset of the crisis. Creative lawyers and company personnel can undoubtedly get to and search their own materials today. As the finder of fact and in an exercise of discretion, I conclude that XCast's evidentiary showing is far too insufficient to establish that compliance with the FTC's request is an impossibility or unduly burdensome. <u>McLane Co.</u>, 137 S. Ct. at 1167-68.

## CONCLUSION

IT IS THEREFORE RECOMMENDED that the District Judge issue an order: (1) accepting the findings and recommendations in this Report; (2) granting the FTC's application for an order compelling compliance with the CID; and (3) ordering XCast to comply with the requests.

Dated: December 9, 2021

HON. MICHAEL R. WILNER
UNITED STATES MAGISTRATE JUDGE